IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00146-MSK

WENDELL DEGREE,

      Petitioner,

v.

KEVIN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

      This matter comes before the Court on the Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (**# 3**)[1], which the Respondents answered (**# 14**). The Petitioner filed no traverse. Having considered the same, along with the pertinent portions of the State Court record (**# 21**), the Court

      **FINDS** and **CONCLUDES** that:

### I. Jurisdiction

      The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 1331.

### II. Background

      The Petitioner was charged in state court with one count of aggravated robbery, one

---

[1] Because the Petitioner appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

count of conspiracy to commit aggravated robbery, and one count of felony menacing.[2] The Petitioner's co-defendant and alleged conspirator, Terrance Williams, was charged with aggravated robbery and conspiracy to commit aggravated robbery. The Petitioner and Mr. Williams were tried jointly for the crimes. At trial, the prosecution alleged that on October 23, 2002, the Petitioner and his co-defendant entered a home and robbed David Dunbar of $160 at gunpoint.

The first trial ended in a mistrial, and a second trial was held from February 10 to February 17, 2004. The jury found the Petitioner guilty on all counts, but acquitted Mr. Williams. The trial court sentenced the Petitioner to ten years of imprisonment on the aggravated robbery conviction and five years of imprisonment on the conspiracy conviction, to be served consecutively. On the menacing conviction, the trial court imposed a three-year term of imprisonment to run concurrently with the sentence for menacing.

The Petitioner filed a direct appeal on April 13, 2005, and the Colorado Court of Appeals affirmed all convictions. *See People v. Degree*, 04CA1208 (Colo. App. June 29, 2006) (unpublished decision) (Answer at Exhibit D). The Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on February 12, 2007. Its mandate issued on February 23, 2007.

The Petitioner commenced this action on January 14, 2008, alleging that: (1) the trial court violated his right to a fair trial by admitting evidence that a judge had determined that the warrant issued for his arrest was supported by probable cause; (2) the trial court violated his

---

[2]This general introductory background is taken from the statement of facts in the Petitioner's opening brief on direct appeal. Answer at Exhibit A, p. 7-8.

2

right to a fair trial by allowing the victim to testify that someone had told him that one of the robbers was named Wendell; (3) that his conspiracy conviction must be vacated because it is legally and factually inconsistent with the jury's acquittal of the Petitioner's co-defendant; and (4) the Petitioner was illegally charged with conspiracy to commit aggravated robbery.

### III. Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S.

4

at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a

5

writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.  "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id*.

### IV.  Analysis

**A.  Procedural Bar**

As a preliminary matter, Respondents assert that the Petitioner failed to exhaust his third and fourth claims upon direct appeal, and therefore, that these claims are now procedurally barred.  Answer at 6-7.

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights.  *See O'Sullivan*, 526 U.S. at

838; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). A claim has been exhausted when it has been "fairly presented" to the state court. *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever*, 36 F.3d at 1534. Reference to broad federal rights such as due process, without also alerting the state courts to the particular analysis developed by the Supreme Court for a specific violation, is insufficient to fairly present a federal constitutional question to the state courts. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996). That is, a petitioner does not fairly present a constitutional claim to the state courts merely because "all the facts necessary to support the federal claim" were before the state courts, or because a "somewhat similar" claim was brought in the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Instead, a petitioner must have presented a "virtually identical" claim. *Duncan v. Henry,* 513 U.S. 364, 366 (1995) (per curiam) (finding that "mere similarity" of claims is insufficient to exhaust). Moreover, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck,* 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper,* 967 F.2d 392, 398 (10th Cir. 1992).

      **1. Claim Three**

In his third claim, the Petitioner argues that his conviction for conspiracy must be vacated because it "is legally and factually inconsistent with the jury's finding the co-defendant not guilty of conspiracy." Petition at 8. Respondents assert that the Petitioner failed to present this

claim in state court as a question of federal constitutional law, because his appellate brief relied nearly exclusively on state law. Answer at 6. Respondents further argue that the only authority cited by the Petitioner, *Hartzell v. United States*, 322 U.S. 680 (1944), is limited to the issue of whether there was sufficient evidence to support a conviction under the Espionage Act of 1917.[3]

The Court has reviewed the Petitioner's opening brief on direct appeal. The Petitioner's third claim was raised as an issue of whether under Colorado law, his conviction was "legally and factually consistent" with the jury's verdict. The Petitioner cited *Hartzell v. United States* in support of the proposition that "[b]y finding that the defendant conspired with another person, while at the same time finding that the other person did not conspire with the defendant, the fact-finder 'arrives at an incongruous conclusion that finds no sanction in law or fact'". In *Hartzell*, the Supreme Court reversed a defendant's conviction for insubordination because the evidence did not support a finding of specific intent. It did not address the issue of whether a jury's acquittal of one defendant precluded a verdict convicting another of conspiracy. Indeed, another Circuit has noted that *Hartzell* did not involve inconsistent jury verdicts. *See also Unites States v. Bucuvalas*, 909 F.2d 593, 597 (1st Cir. 1990). Although reference to particular caselaw might be fairly considered to raise an issue not expressly articulated in the appeal, the Petitioner's reference to *Hartzell* does not satisfy the fair presentation requirement because its facts are not similar to those here, it does not set forth any federal constitutional principles that have apparent application, and the Petitioner did not explicitly connect *Hartzell* to the claim under federal law

---

[3] A copy of the Petitioner's opening brief on direct appeal is attached to the Respondent's Answer as Exhibit A.

that he now seeks to assert.  Therefore, the Court finds and concludes that the Petitioner failed to exhaust state remedies for his third claim.

### 2.  Claim Four

In his fourth claim, the Petitioner argues that his conviction for conspiracy to commit aggravated robbery was illegal.  Petition at 13.  In appellate court, the Petitioner argued that his case must be remanded for re-sentencing because the trial court "erroneously believed that it was required to impose a consecutive sentence for conspiracy."  Answer at Exhibit A, p. 24.  The Petitioner further argued that the Colorado crime of violence statute, Colo. Rev. Stat. § 18-1.3.406(1)(a) (2004), did not require a consecutive sentence because the evidence was insufficient to prove that the Petitioner used a deadly weapon during the crime, and because there was no evidence of two separate crimes of violence.  *Id.* at 24-25.

Although in his appeal, the Petitioner's cited briefly to the Due Process Clause of the United States Constitution, as well as *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), the crux of his claim on appeal was that the trial court incorrectly applied Colorado sentencing laws when it imposed consecutive sentences.  Unfortunately for the Petitioner, the Fourteenth Amendment does not protect against mere misapplication of state law.  *Beck v. Washington*, 369 U.S. 541, 544-55 (1962); *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007).

There is nothing other than the casual reference to the Due Process Clause to suggest a federal right that was violated. He did not alert the state court of any issue other than error in calculation of his sentence.  He did not explain how his right to due process was infringed by misapplication of state law or point to any particular analysis with regard to his constitutional

right that the state court should apply.[4]  Therefore, the Court finds and concludes that the Petitioner failed to exhaust state remedies for his fourth claim.

The Court also finds that these unexhausted claims have been procedurally defaulted. The Petitioner has no available state remedy because any attempt to re-litigate these claims as a violation of federal constitutional law would be rejected as successive and an abuse of process. *See* Colo. R. Crim P. 35(c)(3)(VII) (court shall deny any claim that could have been presented during appeal or post-conviction proceeding previously brought).  It also appears that any further efforts by the Petitioner to raise the unexhausted claims in state court would be time-barred.  *See* Colo. Rev. Stat. § 16-5-402.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  Application of the procedural default rule in the habeas corpus context is grounded on concerns of comity and federalism.  *See Coleman*, 501 U.S. at 730.

The Petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice.  *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).  The Petitioner did not respond to the Answer, and nothing in his Petition demonstrates the cause for or particular prejudice resulting from the

---

[4] the fact that the Petitioner specifically cited or referred to the federal Constitution and federal case law in connection with his first and second claims in his opening brief on direct appeal cuts against any argument that a brief reference to due process satisfies the fair presentation requirement.  *See Baldwin*, 541 U.S. at 33.

procedural default. Furthermore, there is no showing that a failure to consider claims three and four will result in a fundamental miscarriage of justice. Therefore, the Court finds that claims three and four are procedurally barred.

### B. The Merits of the Petitioner's Remaining Claims

#### 1. Claim One

In his first claim, the Petitioner asserts that his right to due process was violated by admission of evidence that his arrest warrant was signed by a judge and supported by probable cause. Petition at 5.

On re-direct examination, Detective Dale Fox testified on February 12, 2004, as follows:

> Q. Generally, when a person is not arrested on scene, what happens next?
> A. If I have - - if I believe I have enough probable cause, then I get an arrest warrant. What I do is I prepare an application with an affidavit outlining my probable cause as I see it, or as the facts exist, but what I believe to be probable cause. And I present that to a judge who reviews the affidavit and decides whether or not - -
> > Mr. Tolini: Your Honor, I'm going to object; relevance.
> > The Court: Objection is overruled, based on the cross-examination of Mr. Waible. Go ahead.
> A. The judge reviews the affidavit, then decides whether or not there is sufficient probable cause to support a warrant. And if there is, he signs the warrant; and if there is not, then the warrant is not signed.
> Q. When a warrant is signed, what then happens to it?
> A. Immediately take it to the warrant office here in this building and I turn it in. . . .
> Q. Is that the procedure you followed in this case?
> A. Yes.
> Q. So arrest warrants were basically filed on both Mr. Williams and Mr. Degree?
> A. Correct.

Trial Court Transcript, Vol. 5 at 104-105.

In addressing this claim, the Colorado Court of Appeals found the following:

> Even if we were to assume that Detective Fox's testimony regarding the

11

> judge's finding of probable cause to sign the arrest warrant was inadmissible under People v. Mullins, 104 P.3d 299 (Colo. App. 2004), we conclude that its admission was harmless error.
>
> Because Degree raised a contemporaneous objection to this evidence at trial, we apply the harmless error standard. Viewing the evidence as a whole, we conclude that the admission of this evidence did not substantially influence the verdict or affect the fairness of the trial proceedings.
>
> At trial, the victim testified that Degree committed the robbery. He identified Degree in court and also testified that he had identified Degree without hesitation in a photo lineup. Further, Detective Fox's testimony about the procedure for obtaining an arrest warrant was brief and given in the context of his testimony about the extent of his investigation of the incident at issue. Accordingly, we reject Degree's contention.

Answer at Exhibit D, p. 6-7.

Federal courts do not grant habeas relief for errors of state law. *See Estelle*, 502 U.S. at 67. This is because "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Thornburg v. Mullin*, 422 F.3d 1113, 1128-29 (10th Cir. 2005). As such, the Petitioner's constitutional challenge to the admission of this evidence is governed by the general principle that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" only when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see also Welch v. Sirmons*, 451 F.3d 675, 692 (10th Cir. 2006). "Inquiry into fundamental fairness requires examination of the entire proceedings, . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (citation omitted)). Further, "because a fundamental fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v. Mullin*, 306 F.3d 982,

999 (10th Cir. 2002) (internal quotation marks omitted). In conducting its fundamental fairness analysis, the court is not to "second guess a state court's application or interpretation of state law . . . unless such application or interpretation violates federal law." *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994). Finally, even if the state court error rises to the level of a constitutional violation, the Court must then conduct its own harmless error analysis pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), to determine whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112 (2007); *see also Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (noting that "in a habeas proceeding, any trial errors will be deemed harmless unless they have a substantial and injurious impact or influence in determining the verdict").

Having reviewed the entire trial court transcript, the Court finds the following: the victim, Mr. Dunbar, testified at trial that he identified the Petitioner in a photographic array compiled by the police "a couple of days" after the incident. Trial Court Transcript, Vol. 4 at 59-62. He further testified that he was "very, very comfortable" with his identification of the Petitioner because "a man holding a gun at you, you're looking at him right in his eyes. You don't know if he's going to pull the trigger or not. You can't forget it." *Id.* at 64. Mr. Dunbar also made an in-court identification of the Petitioner as the man holding the gun on the day that Mr. Dunbar was robbed. *Id.* at 68-69. The fact that the warrant was signed by a judge and supported by probable cause was not mentioned by the prosecutor during closing arguments, nor emphasized at any other time during trial. *See* Trial Court Transcript, Vol. 6 at 3-17. Further, the trial judge properly instructed the jury on the burden of proof beyond a reasonable doubt. *See* Trial Court Transcript at Vol. 6.

Considering all of the above, the Court finds that the reference to a judge finding probable cause was not "so unduly prejudicial that it render[ed] the trial fundamentally unfair". The reference was limited and made in discussion of ordinary practice of obtaining a search warrant. The jury was properly instructed, and there is no suggestion or indication that this evidence influenced the jury's verdict. Because the Court finds that the alleged error did not rise to the level of a constitutional violation, there is no need to conduct a harmless error analysis pursuant to *Brecht v. Abrahamson*. Accordingly, the Court finds that the appellate court's conclusion was not contrary to or an unreasonable application of federal law and the Petitioner is not entitled to federal habeas relief on his first claim.

### 2. Claim Two

In his second claim, the Petitioner asserts that the trial court erroneously permitted the victim to testify that someone had told him that one of the perpetrators of the crime was named Wendell. Petition at 8. The Petitioner contends that admission of this hearsay evidence violated his right to due process. *Id.*

The victim, David Dunbar, testified on February 11, 2004 as follows:

Q. And did you know the name of the gunman?
A. No, I did not, other than hearing someone else make a statement that let me know that was his name, but me personally knowing his name, I didn't.
Q. And what did you hear what you thought might have been his name?
   Mr. Waible:   Objection; hearsay.
   Ms. Joyce:    Judge, offer to show what he told the police officers.
   The Court:    All right. I'll admit it for that purpose; overruled.
Q. I was told his name was Wendell, because a couple of days before - -
A. That's okay, we won't go into that. But you were told his name was Wendell?
Q. Correct.

Trial Court Transcript, Vol. 4 at 54-55.

Here, after reviewing the testimony at issue, the Colorado Court of Appeals found the following:

> Degree argues that this testimony constituted hearsay because it was offered for its truth - - to prove that the gunman's first name was Wendell, just like his. We agree.
>
> Here, the victim repeated a statement by an out-of-court declarant when he testified that someone told him that the gunman's name was Wendell. Although the prosecution argues that it introduced the statement to show what the victim told the police officers, nothing in the records supports this proposition. The colloquy between the prosecutor and the victim that elicited the statement includes no mention of police officers, much less of the victim's repeating anything to police officers.
>
> In the alternative, the prosecution argues that the statement was properly admitted to explain why the police included Degree's picture in the photographic lineup. We disagree.
>
> When the testimony was offered, the prosecution made no attempt to explain this basis for its admissibility. Furthermore, the People correctly note that Detective Fox testified on direct examination the following day that the victim had told him that he believed the gunman's name was Wendell and that, based on that statement, and believing it to be truthful, he compiled a photographic lineup of the person he thought might be Wendell. However, the record indicates that Detective Fox chose the individuals for the lineup based on similar appearance, not the same or similar names.
>
> In any event, even if Detective Fox had chosen the individuals for the lineup based on the name Wendell, the victim's hearsay testimony would still not be admissible to explain this decision because reliance on names to select photos for a photographic lineup is improper. (citation omitted).
>
> Because Degree contemporaneously objected to the hearsay statement at trial, we review for harmless error.
>
> Here, viewing the evidence as a whole, we conclude the hearsay statement did not substantially influence the verdict or affect the fairness of the trial proceedings. As discussed in part I of this opinion, the victim identified Degree at trial and in a photo lineup as the person who robbed him. Thus, there is not a reasonable possibility that the hearsay mention of Wendell influenced the verdict. Accordingly, there was no reversible error.

Answer at Exhibit D, p. 8-10.

Under federal law, hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).  Absent application of an exception, hearsay statements are excluded.  This statement clearly is hearsay; it was an out of court statement offered to prove that one of the perpetrators of the crime was named Wendell, as is the Petitioner.           However, having reviewed the entire trial court transcript, this Court finds that the admission of such hearsay did not render the Petitioner's trial fundamentally unfair.  This was not the only evidence tying the Petitioner to the crime;  the victim twice identified the Petitioner as the man who committed the robbery.  Such testimony was brief, and the prosecutor did not mention it during closing argument, nor was it emphasized at any other time during trial.  The jury was properly instructed, and there is no argument that it improperly relied on such evidence.  As a consequence, this Court cannot find that the single hearsay statement  was "so unduly prejudicial that it render[ed his] trial fundamentally unfair," *Payne*, 501 U.S. at 825.  Again, because the Court finds that the error did not rise to the level of a constitutional violation, there is no need to conduct a harmless error analysis pursuant to *Brecht v. Abrahamson*.

Having found that the Petitioner is not entitled to *habeas corpus* relief on any claim, Petitioner Wendell Degree's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §

2254 (**# 3**) is **DENIED.**

Dated this 8th day of September, 2009

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge